IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WAYNE A. JOHNAKIN,                    :        CIVIL ACTION NO. **1:CV-11-2393**
                                      :
          Plaintiff               :        (Judge Caldwell)
                                      :
          v.                      :        (Magistrate Judge Blewitt)
                                      :
DEBRA ANDIDORA, et al.,               :
                                      :
          Defendants               :

## REPORT AND RECOMMENDATION

### I. Background.

On December 29, 2011, Plaintiff, Wayne A. Johnakin, currently an inmate at the State Correctional Institution at Waymart, Waymart, Pennsylvania ("SCI-Waymart"), filed a civil rights action with this Court, pursuant to 42 U.S.C. § 1983. (Doc. 1).[1]  Plaintiff raises an Eighth Amendment denial of proper medical claim regarding his left eye condition (cataract) and an equal protection claim based on his race under the Fourteenth Amendment.  Additionally, Plaintiff avers that former Defendant Superintendent Nish tampered with his mail to former Senator Specter in which he complained about a long delay for his needed left eye cataract surgery.  Plaintiff also filed an *in forma pauperis* motion. (Doc. 2).  Further, Plaintiff filed a 9-sentence Motion for Temporary Restraining Order ("TRO") seeking the Court to direct medical staff at SCI-Waymart not to retaliate

---

[1] Plaintiff Johnakin has filed previous actions with this Court. *See Johnakin v. Rendell, et al.*, M.D. Pa. Civil No. 1:CV-10-0604, filed March 18, 2010 and closed April 30, 2010; *Johnakin v. Nish, et al.*, M.D. Pa. Civil No. 1:CV-11-0157, filed January 24, 2011 and closed February 11, 2011; and *Johnakin v. Gavin, et al.*, M.D. Pa. Civil No. 1:CV-11-1326, which is a 28 U.S.C. § 2254 petition for writ of habeas corpus and is presently ripe for disposition.

Plaintiff states that in 2006 he was transferred to SCI-Waymart and that he has remained confined in this prison through the present day. (Doc. 1, p. 2 an Doc. 4, p. 1).

against him for forcing them to provide him with the cataract surgery on his left eye and for filing the instant action against them.  (Doc 4).  Plaintiff failed to timely file a support brief with respect to his TRO Motion as required by Local Rule 7.5, M.D. Pa.

Jurisdiction of this Court over Plaintiff's action is pursuant to 28 U.S.C. §1331 and §1343. Plaintiff names four (4) Defendants in his Complaint.  Specifically, Defendants are: Debra Andidora, Health Care Administrator ("HCA"); Ina Presavento, Corizan Clinical Coordinator; Shari Dulske, Nurse; and Joseph P. Nish, former Superintendent.  (Doc. 1, pp. 1-2).  All Defendants were employed by the PA DOC at SCI-Waymart during the relevant times of this case.[2]

## II. Allegations of Complaint.

Plaintiff alleges that after he was transferred to SCI-Waymart in 2006, it was discovered that he had cataracts in both eyes.  Plaintiff alleges that on December 11, 2007, Defendant HCA Andidora arranged for him to have eye surgery on his right eye at Marian Hospital in Carbondale, Pennsylvania.  Plaintiff avers that when he had his surgery, the eye doctor  informed him that he would have cataract surgery on his left eye in about 90 days.  Plaintiff avers that after the 90-day period expired, he made several requests over six months about his left eye surgery, and that he "discovered that [Defendant HCA] Andidora had in-fact falsified my records to the point that I was not even scheduled to return for my [left eye] surgery."  (*Id.*, pp. 2-3).  Also, Plaintiff states that he was not examined by any medical staff member at SCI-Waymart regarding his eyes after his right eye surgery.  Plaintiff avers that Defendant Andidora "discriminated against [him] because of [his]

---

[2]Plaintiff states that Defendant Nish retired on April 15, 2011.

race, and [that she] has been deliberately indifferent to [his] eye care needs that has caused [him] considerable pain and suffering."  Plaintiff states that another inmate, Weaver, who was white and who was housed in the same housing unit as Plaintiff at SCI-Waymart, had surgery on the cataracts in both of his eyes during the time span he had his right eye surgery.[3]   (*Id*.).

Plaintiff avers that 90 days after his December 11, 2007 cataract surgery on his right eye, Defendant Pesavento, who was in charge of the Eye Clinic at SCI-Waymart, advised him that he was approved to have cataract surgery on his left eye.  Plaintiff states that after 3 to 4 months of no action on his left eye, he again signed for sick call to find out what the hold up was for his left eye cataract surgery.  Plaintiff avers that Defendant Pesavento eventually told him that his "eyes were not bad enough" and that he did not need another operation despite the fact that the eye surgeon who performed his December 11, 2007 right eye surgery indicated that he needed surgery on his left eye as soon as possible.  Plaintiff concludes as follows with respect to Defendant Pesavento:

> Ina Pesavento was also discriminatory in her actions concerning my situation, being fully aware of the doctor's orders following the surgery of my right eye, due to the fact(s) that she is the sole person responsible for coordinating of inmate's being taken back and forth to the area hospitals.

(*Id*., pp. 2-4).

Plaintiff states that in the middle of 2008, up until present time, Defendant nurse Dulske

---

[3]As discussed below, we find that Plaintiff's equal protection claim arising in December 2007 is time barred and that Plaintiff has failed to state a cognizable equal protection claim against Defendant Andidora since he does not allege that inmate Weaver had the exact same severity of eye conditions in both his eyes as he had, *i.e.* that Weaver's cataracts in both of his eyes were the same as Plaintiff's cataracts.  Thus, Plaintiff does not allege that he and Weaver were similarly situated.

continually harassed him each morning when she directed him to report to the medical department for his daily insulin shot "by saying racist and derogatory remarks" which he believes was done in order to incite or entrap him to respond in a disrespectful manner which would result in his placement in the Restrictive Housing Unit ("RHU"). (*Id.*, pp. 2 and 4).[4]  Plaintiff does not allege that he was actually charged with a misconduct by nurse Dulske and placed in the RHU at any time.

Finally, Plaintiff avers that he wrote to former U.S. Senator Specter to solicit his help to have the necessary left eye surgery for his cataract and that former Superintendent Nish tampered with his mail "by removing the letter response Senator Specter had written to [him], dater January 13, 2009," and that Nish wrote to Senator Specter denying the truth that he needed left eye cataract surgery as soon as possible. (*Id.*, pp. 2 and 4).[5]

Plaintiff concludes his allegations as follows:

> [T]he entire administration at SCI-Waymart acted in a discriminatory manner to deny petitioner much needed eye surgery, that has now cause[d] him certain pain and suffering, and which amounts to cruel and unusual punishment.

(*Id.*, p. 4).

As relief, Plaintiff seeks specific amounts of compensatory and punitive damages against Defendants for "the physical and emotional injuries sustained as a result of four years of headaches

---

[4]Plaintiff states that Defendant Nurse Dulske is the daughter of Defendant HCA Andidora. (Doc. 1, p. 2).

[5]We find Plaintiff's claim that former Superintendent Nish tampered with his mail in January 2009 to be time barred.

and blurred vision as the result of not providing the necessary eye surgery." (*Id.*, p. 5).[6]  Plaintiff does not state if he sues all DOC Defendants in their individual and official capacities.  Regardless, Plaintiff can only seek monetary damages from the state actor Defendants in their individual capacities.[7]

Plaintiff indicates that he has exhausted all of his DOC administrative remedies regarding his claims.  (*Id.*, p. 1).[8]

We now screen Plaintiff's Complaint (Doc. 1) as we are obliged to do.  *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).

---

[6]Plaintiff's requests for  specific amounts of monetary damages (Doc. 1, p. 5) should be stricken. Since Plaintiff seeks unliquidated damages, he cannot claim  specific sums of relief. Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's requests for specific monetary damages should be stricken from his Complaint.  *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure; *Said v. Donate*, Civil No. 07-1550, M.D. Pa.

[7]As stated, Plaintiff indicates that he seeks money damages from each named Defendant, but he does not indicate if he sues Defendants  in both their individual and official capacities. To the extent that Plaintiff  seeks monetary damages from Defendants, he can only sue the state actor Defendants in their individual or personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).  Thus, we will recommend that all of Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed with prejudice.  We find futility of any amended pleading to sue Defendants for damages in their official capacities.  *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

[8]We refer to the page numbers which appear at the top of the Complaint which was scanned into CM/ECF rather than the page numbers which appear on the bottom of the Complaint.

## III.  PLRA.

As stated, Plaintiff filed an application  to proceed *in forma pauperis* pursuant to

28 U.S.C. § 1915.  (Doc. 2 ).  The Prison Litigation Reform Act of 1995[9] obligates the Court to

engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28

U.S.C. § 1915.[10]  Specifically, Section 1915(e)(2), which was created by

§ 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

## IV.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:

(1) that the conduct complained of was committed by a person acting under color of state law; and

(2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured

by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v.*

*Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Fisher v. Matthews,* –F.Supp.2d–, 2011 WL 1982920,

*23 (M.D. Pa. 5-20-11).  Further, Section 1983 is not a source of substantive rights.  Rather, it is a

---

[9]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[10]The Plaintiff filed an application to proceed *in forma pauperis* with this Court and an authorization to have funds deducted from his prison accounts.  The Court then issued an administrative order directing the warden to commence deduction of the full filing fee from the Plaintiff's prison trust fund account.  (Docs. 2 and 3).

means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[11] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Fisher v. Matthews*, –F.Supp.2d–, 2011 WL 1982920, * 23 *(citing Rode, supra)*.

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See Banks v. County of Allegheny*, 568 F.Supp.2d at 588.

---

[11]Plaintiff alleges in his pleading that Defendants, all employees of the DOC, were state actors.

## V. Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

8

*See also Banks v. County of Allegheny*, 568 F.Supp.2d 588-589.

**VI. Discussion.**

    1.    *Claims for damages against Defendants in their official capacities*

    As noted, Plaintiff does not state if he sues the all of the individual Defendants in both their personal and official capacities. As relief, Plaintiff requests compensatory and punitive damages. (*Id.*, p. 5). We find that, insofar as Plaintiff seeks compensatory damages against all Defendants, he can only sue Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010). Thus, we will recommend that Plaintiff's claims for compensatory damages against Defendants in their official capacities be dismissed with prejudice without leave to amend. Based upon well-settled case law, we find it would be futile to allow Plaintiff to amend his Complaint to seek compensatory damages against Defendants in their official capacities. *See Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010);*Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

    Plaintiff also cannot seek punitive damages as against Defendants in their official capacities. Plaintiff can only seek punitive damages as against Defendants in their individual or personal capacities. *See Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625 (1983). Thus, Plaintiff's claims for punitive damages against Defendants in their official capacities should be dismissed without leave to amend. Thus, we find it would be futile to allow Plaintiff to amend his Complaint to seek punitive damages against Defendants in their official capacities. *See Van Tassel v. Lawrence County Domestic Relations Section,* 659 F.Supp.2d 672, 696 (W.D. Pa. 2009).

Further, Plaintiff's requests for specific amounts of monetary damages, *i.e.* $1,000,000 in compensatory damages and $500,000 in punitive damages from each Defendant (Doc. 1, p. 5), should be stricken.  Since Plaintiff seeks unliquidated damages, he cannot claim specific sums of relief.  Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's requests for specific monetary damages should be stricken from his Complaint.

2.    *Time Barred Claims*

Since Plaintiff dated his Complaint on December 12, 2011, we find that any claims of Plaintiff which pre-date December 12, 2009, are time barred by the applicable two-year statute of limitations.  We find that in screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss Plaintiff's claims which pre-date December 12, 2009 since his allegations make clear that these claims are time barred.  Plaintiff was clearly aware of his pre-December 12, 2009 claims at the time that they arose or he could have reasonably discovered these claims when they arose.  In fact, Plaintiff's detailed allegations in his pleading reveal that he was aware of the stated claims when they arose.

There is a 2-year statute of limitations with respect to a §1983 civil rights action.  The law is clear that §1983 claims are subject to a two-year statute of limitations.  See   *See Metso Paper USA, Inc., v Bostik, Inc.,* 2011 WL 2670320, * 3 (M.D. Pa. 7-8-11); *Bougher v. University of Pittsburgh*, 882 F. 2d 74, 78-79 (3d Cir. 1989); *Fitzgerald v. Larson*, 769 F. 2d 160, 162 (3d Cir. 1985); *Martin v. Red Lion Police Dept.*, Civil No. 00-16122, M.D. Pa. (October 26, 2004 Memorandum), pp. 5-6 affirmed 146 Fed.Appx. 558 (3d Cir. 2005); *Beattie*, 2009 WL 533051, * 8. Further, under Pennsylvania's discovery rule, the statute of limitations begins to run when the

Plaintiff has discovered his injury or, in the exercise of reasonable diligence, should have discovered his injury. *Doe v. Kohn, Nast & Graf, P.C.*, 866 F. Supp. 190 (E.D. Pa. 1994); *Beattie, supra*. It is abundantly clear in the present case, and readily apparent from Plaintiff's very detailed allegations that he discovered, or should have discovered, all of his pre-December 12, 2009 constitutional claims at the time they arose. Further, Plaintiff does not assert any basis to toll the statute of limitations with respect to his pre-December 12, 2009.

We find that in screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss Plaintiff's action since his pleading is clear that he did not timely file his constitutional claims. *See McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10); *Robinson v. Varano*, Civil No. 10-2131, M.D. Pa. (January 25, 2011 Order); *Jones v. Lorady*, Civil No. 11-0666, M.D. Pa. (June 17, 2011 Order).

In *McPherson v. U.S.*, 2010 WL 3446879, *3-*4, the Third Circuit stated:

> Failure to exhaust and the statute of limitations are similar "in the abstract": they are both affirmative defenses. But, a court may nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint. We see no reason why a district court, when screening a complaint pursuant to the PLRA, may not *sua sponte* dismiss a suit whose allegations make clear that the action is not timely. Indeed, other Courts of Appeals have recognized that dismissal under these circumstances is appropriate. *See, e.g., Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir.2006); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir.2001); *Nasim v. Warden, Maryland House of Corr.*, 64 F.3d 951, 956 (4th Cir.1995) (en banc); *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir.1995).FN4 We agree that when a statute-of-limitations defense is apparent from the face of the complaint, a court may sua sponte dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A.

*See also Barnett v. York County,* Civil No. 11-906, M.D. Pa.

11

Thus, based on *McPherson* and *Barnett*, even though the statute of limitations is an affirmative defense, *sua sponte* dismissal of all Plaintiff's pre-December 12, 2009 claims by this Court is nonetheless proper since it is abundantly clear from the face of his Complaint that these claims are time barred.  Therefore, we will recommend that all of Plaintiff's pre-December 12, 2009 claims be dismissed with prejudice as time barred.

Specifically, we find that Plaintiff's stated Fourteenth Amendment discrimination claims and Eighth Amendment denial of proper medical care claims against Defendants HCA Andidora and Defendant Pesavento which pre-date December 12, 2009, are time barred.  (Doc. 1, pp. 2-4).  We also find that Plaintiff's claim that Defendant Nish tampered with his mail to Senator Specter is time barred since it clearly occurred in January 2009, more than two years before Plaintiff filed this action.  (*Id.*, pp. 2 and 4).

Based upon the above, we find that the Court should not allow Plaintiff to amend his Complaint with respect to the stated pre-December 12, 2009 claims against Defendants HCA Andidora, Nish and Defendant Pesavento, since we find they are clearly time barred and that it would be futile to allow an amendment regarding these claims. The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002).  Thus, if a Complaint is subject to dismissal, the Court must first allow Plaintiff leave to amend unless it finds bad faith, undue delay, prejudice, or futility. *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

3.     *Harassment Claim against Defendant Nurse Dulske,*

As stated, Plaintiff alleges that from the middle of 2008 through the present time, Defendant Nurse Dulske continually harassed him each morning when he reports to the medical department for his insulin shot by saying "racist and derogatory" remarks. (Doc. 1, pp. 2 and 4). Plaintiff does not allege that Defendant Dulske denied him proper medical care for either his left eye or for his diabetes. Nor does Plaintiff allege that Defendant Dulske caused him to be placed in the RHU by inciting him to disrespect her based on her harassment.

The law is well-settled that mere threatening language does not constitute a constitutional violation. As the Court stated in *Aponte v. Karnes*, 2008 WL 360879, *3 (M.D. Pa.):

> It has been recognized that the use of words generally cannot constitute an assault actionable under § 1983. *Johnson v. Glick,* 481 F.2d 1028, 1033 n. 7 (2d Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Maclean v. Secor,* 876 F.Supp. 695, 698-99 (E.D.Pa.1995); *Murray v. Woodburn,* 809 F.Supp. 383, 384 (E.D.Pa.1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."); *Prisoners' Legal Ass'n v. Roberson,* 822 F.Supp. 185, 189 (D.N.J.1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."); *Jones v. Superintendent,* 370 F.Supp. 488, 491 (W.D.Va.1974).
>
> Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. *Fisher v. Woodson,* 373 F.Supp. 970, 973 (E.D.Va.1973): *see also Balliet v. Whitmire,* 626 F.Supp. 219, 228-29 (M.D.Pa.) ("[v]erbal abuse is not a civil rights violation ...."), *aff'd,* 800 F.2d 1130 (3d Cir.1986). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, *see Prisoners' Legal Ass'n,* 822 F.Supp. at 189, or under the Fifth Amendment's substantive due process clause, *see Pittsley v. Warish,* 927 F.2d 3, 7 (1st Cir.1991), *cert. denied,* 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991). Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. *See Northington v. Jackson,* 973 F.2d

13

> 1518 (10th Cir.1992) (guard put a revolver to the inmate's head and threatened to shoot); *Douglas v. Marino,* 684 F.Supp. 395 (D.N.J.1988) (prison employee threatened an inmate with a knife). It has also been found that verbal harassment can rise to a constitutional level in a situation where fulfillment of the threat was conditioned on the inmate's exercising some constitutionally protected right. *Bieros v. Nicola,* 860 F.Supp. 226, 233 (E.D.Pa.1994): *see also Prisoners' Legal Ass'n,* 822 F.Supp. at 189; *Murray,* 809 F.Supp. at 384.

*See also Kimball v. Walters*, 2007 WL 87897, *7 (M.D. Pa.).

Thus, we will recommend that Plaintiff's harassment claim against Defendant Dulske be dismissed with prejudice.  Based upon the above, we find that the Court should not allow Plaintiff to amend his Complaint with respect to his stated harassment claim against Defendant Dulske, since we find that it clearly fails to state a cognizable claim and that it would be futile to allow an amendment regarding this claim.  The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002).  Thus, if a Complaint is subject to dismissal, the Court must first allow Plaintiff leave to amend unless it finds bad faith, undue delay, prejudice, or futility.  *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

4.      *Post-December 12, 2009 Eighth Amendment Denial of Proper Medical Care claims against Defendants Andidora and Presavento*

We find that Plaintiff should be allowed to proceed with respect to his post-December 12, 2009 Eighth Amendment denial of proper medical care claims against Defendants Andidora and Presavento regarding his left eye cataract condition.  We also find that Plaintiff has only sufficiently stated the personal involvement of Defendants Andidora and Presavento with respect

14

to his stated Eighth Amendment claims.  Plaintiff alleges in his TRO Motion (Doc. 4, p. 2) that when he filed a private criminal Complaint with the Pennsylvania Attorney General's Office in 2011, "the medical department at SCI-Waymart again started the process for me to have the cataracts removed on my left eye, in early August of 2011, approximately four (4) years after my right eye was done." Plaintiff also avers that "[o]ver the four (4) years of waiting to have the necessary surgery performed on my left eye, I endured considerable pain and suffering due to the continuous headaches and blurred vision."  (*Id*.).

Initially, with respect to the medical Defendants, namely, Defendants Andidora and Presavento, to the extent Plaintiff is deemed as seeking to sue these medical staff Defendants for negligence regarding his medical care for his left eye cataract condition and is seeking to raise medical malpractice claims against them, he cannot do so in a § 1983 civil rights action.  *See Bailey v. Palakovich*, 2007 WL 1450698, *5 (M.D. Pa.).[12]  Thus, we will recommend that any medical malpractice claims Plaintiff is deemed as raising against Defendants Defendants Andidora

_____

[12]To the extent Plaintiff is seeking to file a medical malpractice action under state law against Defendants Defendants Andidora  and Presavento in this case, he was required to file a Certificate of Merit ("COM") under Pennsylvania law pursuant to Pa.R.C.P. 1042.3(a)(1).  A COM is required for a Pennsylvania professional negligence claim raised in a malpractice action. *See Santee v. U.S.*, Civil Action No. 3:CV-07-2207, September 30, 2008 Memorandum and Order (M.D. Pa.),  2008 WL 4426060 (M.D. Pa.).  "The COM requirement is set forth in a procedural rule, but federal courts exercising diversity and supplemental jurisdiction have considered it substantive law that must be applied to claims under Pennsylvania law presented in federal court."  *Booker v. U.S.*, 2009 WL 90129, *3 (citations omitted).  The Third Circuit affirmed a case in the Middle District of Pennsylvania in which the District Court found that PA Rule 1042.3 is a rule of substantive state law and that Plaintiffs in federal court must comply with this rule.  *See Perez v. Griffin*, 2008 WL 2383072 (M.D. Pa.), aff'd. 2008 WL 5351829 (3d Cir. 12-23-08); *Hodge v U.S. DOJ*, 372 Fed. Appx. 264, 267 (3d Cir. 2010) (A COM is required to state a medical negligence claim in federal court).
There is no record that Plaintiff filed a COM in this case.

and Presavento  be dismissed.

We find that Plaintiff has stated a cognizable Eighth Amendment denial of proper medical care claims regarding his post-December 12, 2009 allegations as against the medical Defendants, namely, Defendants Andidora and Presavento.  We do not find that Plaintiff has stated the personal involvement of Defendants Nish and Dulske with respect to his denial of proper medical care claim regarding his left eye cataract condition.

In *Iseley v. Beard*, 2009 WL 1675731, *7 (M.D. Pa.), the Court stated that:

> A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."*Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment ..." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

In *Williams v. Klem*, 2008 WL 4453100, *7 (M.D. Pa.), the Court stated:

> The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis,* 372 F.3d 218, 235-36 (3d Cir.2004); *Natale v. Camden Cty. Correctional Facility,* 318 F.3d 575, 582 (3d Cir.2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1979).  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the

> need for a doctor's attention. *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d
> at 347. "Additionally, 'if unnecessary and wanton infliction of pain results
> as a consequence of denial or delay in the provision of adequate medical
> care, the medical need is of the serious nature contemplated by
> the Eighth Amendment.' " *Young v. Kazmerski,* 266 Fed. Appx. 191,
> 193 (3d Cir.2008) (quoting *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d
> at 347).

Applying these principles to the above detailed allegations Plaintiff asserts against the stated medical Defendants, namely, Andidora and Presavento, we find that viable Eighth Amendment claims are stated against them. *See  Mimms v. U.N.I.C.O.R.*, 2010 WL 2747470, *2 (3d Cir.).

We also find that Plaintiff's above specified allegations against Defendants Nish and Dulske fail to state a viable Eighth Amendment claim.  Further, Plaintiff does not allege that Defendants Nish and Dulske were involved with his medical care for his left eye condition, or that they directed the other DOC Defendants to violate his rights.  Additionally, Plaintiff readily admits that he was under the care of the medical department at SCI-Waymart with respect to both of his eyes and his cataracts conditions.

We find that Plaintiff has named Defendant Nish only based on *respondeat superior* which is not an acceptable basis to hold this Defendant liable in a civil rights action.  *See Rhines v. Bledose*, 2010 WL 2911628, *2 (3d Cir.).  As discussed above, Plaintiff does not specifically state the personal involvement of Defendant Nish or Defendant Dulske with respect to his denial or proper medical care claim regarding his left eye.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims.
> *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868
> (2009) ("Government officials may not be held liable for unconstitutional
> conduct of their subordinates under a theory of *respondeat superior.*" );

> *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought
> under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* )
> (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather,
> each named defendant must be shown, via the complaint's allegations, to have
> been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S.
> at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each
> Government-official defendant, through the official's own individual actions,
> has violated the Constitution.") "Personal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the
> 'personal involvement' requirement, a [§ 1983] complaint need only
> allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326
> F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

In his Complaint, Plaintiff is clearly attempting to assert his claims against Defendant Nish based only on *respondeat superior*.   Further, neither Defendant Nish nor Defendant Dulske  are sufficiently stated to have been personally involved with any cognizable violation of Plaintiff's Eighth Amendment  rights.  Nor are Defendants Nish and Dulske alleged to have directed the other DOC Defendants to violate his rights.  *Id.*

The Supreme Court in *Iqbal* repeated the personal involvement necessary in a §1983 action. In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court, citing *Iqbal,* stated:

> "To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to 'state a claim to relief that is plausible on
> its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009)
> [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.
> 544, 570 (2007)).

> "Innis's allegation against Wilson also fail because Innis is attempting
> to establish liability based on supervisory liability. *See Rode v. Dellarciprete,*
> 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely
> on the operation of respondeat superior, as a defendant must have
> personal involvement in a civil rights action). Innis does not allege that
> Wilson had personal knowledge of his injury and subsequently acted with

18

deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

In *Saltzman v. Independence Blue Cross*, 2009 WL 1606887, *4 (E.D. Pa.), the Court stated:

> The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 555); *see also Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing *Twombly,* 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).

In order to state an actionable claim under §1983, as indicated above, a plaintiff must allege that a person has deprived him of a constitutional right, and that the person who caused the deprivation acted under color of state law. *See Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M.D. Pa. 2005); *Ayers*, 2009 WL 801867, *5; *Santiago, supra*. Plaintiff has not alleged a causal connection between the direction by Defendants Nish and Dulske and the violation fo his Eighth Amendment rights by the other Defendants. *See Santiago, supra*.

Further, Defendant Nish, a non-physician, cannot be found deliberately indifferent to the Plaintiff's serious medical need for his left eye cataract condition, as the Plaintiff clearly indicates that the prison medical staff at SCI-Waymart, including Defendants Andidora and Presavento, were aware of his eye conditions. *Durmer v. O'Carroll*, 991 F.2d. 64, 69 (3d. Cir. 1993). *See also Thomas v. Zinkel,* 155 F. Supp. 2d 408, 413 (E.D. Pa. 2001) (Prison officials "who are not physicians

cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." (Citing *Durmer*, 991 F. 2d at 69 n. 14)); *Newton v. Reitz*, 2009 WL 233911("the United States Court of Appeals for the Third Circuit held in *Durmer* that a non-physician Defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff.")(Citing *Durmer*, 991 F. 2d at 69); *Meekins v. Law*, 2007 WL 2318118, * 3 (M.D. Pa. 8-8-07).

Therefore, we will recommend that Plaintiff's Eighth Amendment claims for denial of proper medical care against Defendants Nish and Dulske be dismissed with prejudice.  Based upon the above, we find that it would be futile to allow Plaintiff to amend his Complaint against Defendants Nish and Dulske with respect to his Eighth Amendment claims for denial of proper medical care regrading his left eye condition.  *See Alston, supra*.

Therefore, we will recommend that Defendants Nish and Dulske be dismissed entirely since we find that Plaintiff has failed to state any cognizable constitutional claim against them and since we find that Plaintiff's tampering with mail claim against Nish is time barred.

## VII. Plaintiff's TRO Motion (Doc. 4).

Injunctions may issue in only exceptional and extraordinary circumstances.  *Parent v. Whinston*, 347 F. Supp. 471, 472 (E.D. Pa. 1972), *citing Miller v. Standard Nut Margarin Co.*, 284 U.S. 498 (1932).  The grant or denial of a motion for a preliminary injunction is within the sound discretion of the district judge.  *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443, *citing Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.*, 630 F.2d 120, 136 (3d Cir. 1978), *cert. denied*, 449 U.S.

20

1014 (1980).  A preliminary injunction is not granted as a matter of right.  *Id.*   Also, the moving party must demonstrate: (1) the  likelihood of success on the merits; (2) that the party will suffer irreparable harm by the denial of the injunction; (3) that granting the relief will not result in even greater harm to the other interested party; and (4) the public interest will not be adversely affected by the granting of relief.  *Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987); *In Re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982). "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *Arthur Treacher's*, 689 F.2d at 1143.

A court may not grant a preliminary injunction when the issues raised in the motion for a preliminary injunction are entirely different from those raised in the complaint. *Stewart v. United States Immigration and Naturalization Service*, 762 F.2d 193, 198-199 (2d Cir. 1985).  "Because the purpose of preliminary injunctive relief is to maintain the status quo or prevent irreparable injury pending the resolution of an underlying claim on the merits, the injury claimed in a motion for such relief must necessarily relate to the conduct alleged and permanent relief sought in a plaintiff's complaint." *Africa v. Vaughn*, Civ. No. 96-649, 1996 WL 677515, at p.1 (E.D. Pa. Nov. 21, 1996) *citing Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Stewart*, 762 F.2d at 198-199; *Penn v. San Juan Hospital*, 528 F.2d 1181, 1185 (10th Cir. 1975).

Thus, as the Court stated in *Hartmann v. Maybee-Freud*, 279 Fed. Appx. 142, 144 (3d Cir. 2008), the Plaintiff in a civil rights action who filed a motion for preliminary injunction "was required to show that he was likely to succeed on the merits of his claims, that the denial of relief would result in irreparable harm, and that granting the injunction would not result in irreparable

harm to the Defendants and was in the public interest."(citation omitted).  *See also Ball v. SCI-Muncy,* 2010 WL 4352929, *4 (M.D. Pa. 10-27-10).

> In *Ball,* the Court stated:
>
> A preliminary injunction is not granted as a matter of right. *Kershner v. Mazurkewicz,* 670 F.2d 440, 443 (3d Cir.1982) (affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials). It is an extraordinary remedy that places precise burdens on the moving party. As a threshold matter, it is a movant's burden to show that the preliminary injunction is the only way of protecting the plaintiff from harm. *Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 91 (3d Cir.1992). For [a Plaintiff]  to sustain his burden of proof under Fed.R.Civ.P. 65, he must demonstrate both a reasonable likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted. *Abu-Jamal v. Price,* 154 F.3d 128, 133 (3d Cir.1998); *Kershner,* 670 F.2d at 443. If the movant fails to carry this burden on either of these elements, the motion should be denied. *Hohe v. Casey,* 868 F.3d 69, 72 (3d Cir.1989).
>
> Irreparable injury is established by showing that Plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm.") Further, immediate irreparable injury is more than merely serious or substantial harm. *ECRI v. McGraw-Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987). "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." *Acierno v. New Castle County,* 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." *Dice v. Clinicorp, Inc.,* 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ...." *Acierno,* 40 F.3d at 655 (citation omitted).
>
> ............................................................................................................................
>
> Other considerations in assessing a motion for preliminary injunctive relief is the possible harm to other interested parties if the relief is granted, *see Kershner,* 670 F.2d at 443, and whether the issuance of relief would be adverse to the public interest. *Dominion Video Satellite, Inc. v. Echostar Corp.,* 269 F.3d 1149, 1154 (10th Cir.2001).

*Id.,* *4-*5.

In his TRO Motion, Plaintiff states that he filed his motion to ensure that Defendants do not retaliate against him for filing his instant Complaint against them, including the former Superintendent at SCI-Waymart and the current medical staff at the prison. Initially, with respect to Defendant Joseph P. Nish, former Superintendent, we find that Plaintiff's request for a TRO against this Defendant to prevent him from retaliating against Plaintiff to be moot since Plaintiff does not claim that Nish has returned to SCI-Waymart in any official capacity or that Nish has any further authority over Plaintiff or prison staff. *See Toney v. Bledsoe*, 427 Fed.appx. 74 (3d cir. 2011).

With respect to the medical staff Defendants, as discussed above, we will recommend that Plaintiff's Eighth Amendment denial of proper medical care claims with respect to his left eye cataract condition regarding his post-December 12, 2009 allegations as against Defendants Andidora and Presavento be allowed to proceed. Nonetheless, Plaintiff does not show that these two Defendants are retaliating against him or that he is in imminent danger of such retaliation. The relief Plaintiff requests in his TRO is entirely speculative since there is no evidence that medical Defendants, namely, Defendants Andidora and Presavento, will retaltiate or have retaliated against Plaintiff. In *Dandar v. Krysevig*, 2010 WL 486529, *4 (W.D. Pa. 2-5-10), the Court stated that the movant bears the burden of showing irreparable injury, and that he must show "immediate irreparable injury, which is more than merely serious or substantial harm." (Citations omitted). The Dander Court also stated that "the claimed injury cannot merely be possible, speculative or remote", and that "an injunction os not issued 'simply to eliminate a possibility of a remote future injury ... .' "(citations omitted).

In short, Plaintiff has failed to show immediate irreparable injury in his TRO Motion with respect to any Defendant.  Thus, we will recommend that Plaintiff's TRO Motion (Doc. 4) be denied.

## VIII.  Recommendation.

Based on the foregoing, it is respectfully recommended that Plaintiff's claims for money damages, both compensatory and punitive, against all Defendants in their official capacities be dismissed with prejudice.  It is recommended that Plaintiff's requests for specific monetary damages should be stricken from his Complaint.  It is recommended that all of Plaintiff's constitutional claims against Defendants Nish and Dulske be dismissed with prejudice, and that these two Defendants be dismissed entirely from this case.  Further, it is recommended that all of Plaintiff's pre-December 12, 2009 constitutional claims against Defendants be dismissed with prejudice since they are time barred.

Moreover, it is recommended that Plaintiff's Eighth Amendment denial of proper medical care claims with respect to his left eye cataract condition regarding his post-December 12, 2009 allegations as against the medical Defendants, namely, Defendants Andidora and Presavento, be allowed to proceed.

Additionally, it is recommend that Plaintiff's TRO Motion **(Doc. 4)** be denied.

24

Finally, it is recommended that his case be remanded to the undersigned for further proceedings as against Defendants Andidora and Presavento.


<u>s/ Thomas M. Blewitt</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: Februar**y **3, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WAYNE A. JOHNAKIN,                       :        CIVIL ACTION NO. **1:CV-11-2393**
                                         :
              Plaintiff                  :        (Judge Caldwell)
                                         :
      v.                                 :        (Magistrate Judge Blewitt)
                                         :
DEBRA ANDIDORA, et al.,                  :
                                         :
              Defendants                 :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 3, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


_s/ Thomas M. Blewitt_
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 3, 2012**